RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0338p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

DOMINGA SANIK HERRERA,

                  *Petitioner*,

   *v.*

PAMELA BONDI, Attorney General,

                  *Respondent*.

No. 25-3207

─────────────────

On Petition for Review from the Board of Immigration Appeals.
No. A 075 334 494.

Decided and Filed:  December 15, 2025

Before:  NALBANDIAN, DAVIS, and HERMANDORFER, Circuit Judges.

─────────────────

## COUNSEL

─────────────────

**ON BRIEF:**  Margaret W. Wong, MARGARET WONG & ASSOCIATES LLC, Cleveland, Ohio, for Petitioner.  Remi da Rocha-Afodu, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

─────────────────

## OPINION

─────────────────

HERMANDORFER, Circuit Judge.  After Dominga Sanik Herrera entered the United States unlawfully, an immigration judge ordered her removed to her native country of Guatemala.  Herrera later sought to reopen her removal proceedings on the ground that she lacked notice of the original removal hearing.  Herrera's attempt failed after she did not respond to an IJ's request for more information about her lack-of-notice claim.  Nearly a decade later, in 2020, Herrera re-raised her lack-of-notice argument in a second motion to reopen her removal

proceedings. The IJ denied her motion as number barred. The Board of Immigration Appeals agreed and dismissed Herrera's appeal of the IJ's decision. It also declined to reopen proceedings sua sponte. Because Herrera failed to exhaust her number-bar challenge, we deny her petition in part. And because we lack jurisdiction over the Board's decision not to reopen sua sponte, we dismiss her petition in part.

I

Herrera, a native and citizen of Guatemala, entered the United States without inspection in January 1994. In March 1997, she applied for asylum and withholding of removal. It appears the address Herrera provided on her application was that of a Tennessee man who helped her complete the asylum application because Herrera believed him to be "a knowledgeable immigration attorney" at the time. A.R. 94. The application nonetheless attested that Herrera resided at the provided address and listed no alternative way of reaching Herrera. And Herrera did not make any changes to that address or provide an alternative address at her asylum interview.

Two months later, using the address from Herrera's application, the Government served Herrera with a Notice to Appear. The Notice to Appear charged her as removable under 8 U.S.C. § 1182(a)(6)(A)(i). It set her removal proceeding for a date in August; the hearing was later advanced to June 19, 1997. Herrera did not attend the June hearing. An IJ then ordered Herrera removed in absentia.

Over a decade later, in September 2010, Herrera moved to reopen her removal proceedings and rescind the in absentia removal order. Herrera contended that she never received the Notice to Appear and that she lacked notice of the June 1997 hearing date. In December 2010, the IJ issued an interim order requesting additional evidence regarding Herrera's lack-of-notice claim within 60 days. Herrera failed to provide more evidence or any further response. So the IJ denied her motion to reopen. Herrera did not appeal the IJ's decision to the Board.

Herrera waited nearly another decade before filing a second motion to reopen in June 2020. That second motion asserted the same notice-based arguments Herrera pressed previously.

In response, the IJ recognized that persons previously ordered removed may generally file only one motion to reopen. *See* 8 U.S.C. § 1229a(c)(7)(A); 8 C.F.R. § 1003.23(b)(1). The IJ noted that agency regulations further specify that "an alien may file only one motion" to reopen and rescind an in absentia order of removal "based on lack of notice." A.R. 54 (citing 8 C.F.R. § 1003.23(b)(4)(ii)). Herrera, in the IJ's view, did not satisfy the changed-country-conditions exception to that number-bar rule as needed to advance a new asylum or withholding-of-removal claim. *See* 8 C.F.R. § 1003.23(b)(4)(i). So the IJ applied the number-bar rule to reject Herrera's second motion.

Herrera appealed the IJ's decision to the Board. Her brief before the Board contended that she never received adequate notice of the 1997 removal hearing and that extraordinary circumstances excused her failure to appear at that hearing. Herrera also argued that the in absentia order was erroneous because the IJ applied the incorrect legal framework. And she requested that the Board reopen her proceedings sua sponte. Missing from the brief was any argument about the IJ's number-bar conclusion.

The Board dismissed Herrera's appeal. It concluded that Herrera did "not meaningfully challenge the [IJ's] determination that her motion [was] numerically barred." A.R. 3. The Board also determined that Herrera did "not make any argument for equitable tolling of the numerical limitation." *Id.* So the Board "deem[ed] these issues waived." *Id.* And because the number-bar analysis was "dispositive," the Board did not address Herrera's merits arguments supporting her second motion to reopen. *Id.* at 4. Finally, the Board declined to reopen Herrera's removal proceedings sua sponte. In explaining that "discretionary" decision, the Board cited Herrera's lack of "due diligence in seeking reopening" over the 27 years following her removal order, her lengthy unlawful presence, and the "importance of finality in immigration proceedings." *Id.*

Herrera timely petitioned for this Court's review.

II

Herrera challenges three aspects of the Board's decision. *First*, she contends that the Board erred in its number-bar analysis. That is so, she claims, because the Board failed to consider whether equitable tolling applied to the numerical limitation on her second motion to

reopen.  She also asserts that the number bar did not preclude her motion in any event.  *Second*, Herrera argues that the Board erred in declining to reopen her removal proceedings sua sponte. And *third*, she maintains that the Board violated her Fifth Amendment right to due process by failing to adequately explain its reasoning.  We address, and reject, each challenge in turn.

## A

The agency denied Herrera's second motion to reopen on the ground that the motion was number barred.  But as the Government points out, Herrera's brief to the Board did not contest the IJ's number-bar holding.  From there, the Government argues that Herrera failed to exhaust her challenge to the agency's reliance on the number bar.  And it says her failure in turn precludes this Court's review of the present arguments.  We agree.

Courts generally "may review a final order of removal only if" "the alien has exhausted all administrative remedies available to the alien as of right."  8 U.S.C. § 1252(d).  Although non-jurisdictional, the exhaustion requirement is a claim-processing rule "that a court must enforce" when "a party properly raises it"—as the Government does here.  *Mazariegos-Rodas v. Garland*, 122 F.4th 655, 664 (6th Cir. 2024) (quoting *Fort Bend County v. Davis*, 587 U.S. 541, 549 (2019)).  To satisfy that exhaustion requirement, those appealing IJ decisions must "preserve *each claim* by presenting it to the" Board.  *Cuevas-Nuno v. Barr*, 969 F.3d 331, 334 (6th Cir. 2020) (citation omitted).  We look to the petitioner's "brief before the [Board] to determine which claims [she] adequately raised before that body."  *Id.*

The Board determined that Herrera "waived" any challenge to the IJ's conclusion that her second motion to reopen was number barred.  A.R. 3.  The Board likewise deemed waived "any argument for equitable tolling of the numerical limitation."  *Id.*  We agree that Herrera's brief before the Board failed to specifically challenge the IJ's determination that the number bar applied.  Her Board brief instead opted to discuss equitable tolling in the context of the 180-day filing deadline for motions to reopen.  *See* 8 C.F.R. § 1003.23(b)(4)(ii).  But that deadline was not at issue in the IJ's decision.  And Herrera's brief before the Board otherwise made no mention of "equitable tolling" as applied to the number bar.  Herrera Br. 22.  Herrera's brief in this Court likewise fails to address—and forfeits any challenge to—the Board's waiver analysis.

*See In re Burke*, 863 F.3d 521, 528 (6th Cir. 2017). We therefore deny Herrera's petition for review of the Board's number-bar decision on exhaustion grounds without proceeding to the merits of her notice-based arguments.

B

Herrera next contends that the Board erred by failing to consider her "exceptional circumstances" when declining to reopen her proceedings sua sponte. Herrera Br. 20. That argument also fails because we generally lack jurisdiction to review the Board's denial of sua sponte reopening. Nor do Herrera's arguments support treating her case as an exception to our no-review rule.

1

Before the Board, Herrera moved for reopening of her case sua sponte. If a party's *request* to reopen a case *sua sponte* sounds like a "misnomer," that's because it is. *Salazar-Marroquin v. Barr*, 969 F.3d 814, 816 n.1 (7th Cir. 2020). "Sua sponte" refers to an action taken by an adjudicator "[w]ithout prompting or suggestion." *Sua Sponte*, *Black's Law Dictionary* 1728 (12th ed. 2024). So definitionally, "reopening is not *sua sponte* where the alien requests it." *Djie v. Garland*, 39 F.4th 280, 282 n.1 (5th Cir. 2022).

These so-called "sua sponte" reopening motions do not stem from any statutory right—indeed, the Immigration and Nationality Act "does not specifically address" the concept of sua sponte reopening. *Tamenut v. Mukasey*, 521 F.3d 1000, 1003 (8th Cir. 2008) (en banc). Instead, the Board's power to engage in sua sponte reopening derives exclusively from the Board's regulations. *See* 8 C.F.R. § 1003.2(a). The operative provision states that "[t]he Board may at any time reopen or reconsider on its own motion any case in which it has rendered a decision." *Id.* And it goes on to note that "[t]he Board has discretion to deny a motion to reopen even if the moving party has made out a prima facie case for relief." *Id.* No other limits on the Board's sua sponte authority appear.

We've thus explained that the regulation vests "unfettered discretion" in the Board "to decide whether to exercise *sua sponte* authority." *Guzman-Torralva v. Bondi*, 154 F.4th 880,

884 (6th Cir. 2025) (citation omitted).  That dynamic has follow-on consequences for our authority to engage in judicial review.  Under the Administrative Procedure Act, courts lack power to review agencies' decisions when the "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2).  In *Harchenko v. INS*, 379 F.3d 405 (6th Cir. 2004), we concluded that the Board's unfettered discretion as to "whether to invoke *sua sponte* authority" to reopen meant such decisions are "not subject to judicial review," *id.* at 410-11 (citation omitted).

From then on, our decisions have reiterated the rule that "we lack jurisdiction to review a [Board] decision declining to exercise its discretionary authority to sua sponte reopen a removal order." *Cuevas-Nuno*, 969 F.3d at 335.[1]  Applying that "well settled" rule here, we conclude that the Board's discretionary decision to deny Herrera's motion for sua sponte reopening is likewise "not subject to judicial review." *Guzman-Torralva*, 154 F.4th at 884 (citation omitted).

2

Herrera's counterarguments in favor of review do not persuade.  She first contends that *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), means we now "may independently review" the Board's denial of sua sponte reopening "for legal errors." Herrera Br. 3, 9-10.  We disagree.  Under *Loper Bright*, courts must exercise their independent judgment when interpreting the statutory provisions agencies administer.  603 U.S. at 394.  But our prior cases declining to review the Board's sua sponte reopening decisions have not rested on deference to the Board's reading of a statute.  *See Barry v. Mukasey*, 524 F.3d 721, 723 (6th Cir. 2008); *Harchenko*, 379 F.3d at 410-11.  So *Loper Bright* does not call for unsettling our no-review rule.

Herrera otherwise suggests that we may review whether the Board committed an underlying legal error in denying review sua sponte.  But in *Rais v. Holder*, 768 F.3d 453 (6th Cir. 2014), we held that our no-jurisdiction rule applied even accepting that the Board's sua sponte denial there turned on "questions of law," *id.* at 464.  *Rais* has since been understood by

---

[1]*See also, e.g.*, *Guzman-Torralva*, 154 F.4th at 884; *Lopez v. Garland*, 990 F.3d 1000, 1003 (6th Cir. 2021); *Barry v. Mukasey*, 524 F.3d 721, 723 (6th Cir. 2008).

many to preclude legal-error review of sua sponte reopening denials.**2** That view would mandate rejecting review of Herrera's sua sponte reopening request no matter its legal-error gloss.

Just recently, though, our Court deemed it not "clear" whether *Rais*'s no-review rule governs requests to review the "legal standards underlying" the Board's denial of sua sponte reopening. *Vargas-Rodriguez v. Bondi*, 156 F.4th 708, 716 (6th Cir. 2025). Some unpublished decisions have suggested the same.**3** Whatever the potential conflicts in our caselaw, we need not cull through them here. That is because Herrera's review request puts no cognizable "legal standards" in play regardless. *Id.*

Examining the Board's decision shows why. The Board did not rest its denial of sua sponte review on some discrete legal issue. Instead, the Board opted to "decline [its] discretionary authority" in light of equitable and policy-based considerations—like Herrera's lengthy period of unlawful presence, her delay in seeking relief, and the importance of finality in the immigration system. A.R. 4. Those are heartland matters of enforcement discretion—not reliance on "a legal determination." *Chen v. Garland*, 43 F.4th 244, 254 (2d Cir. 2022); *see also Barajas-Salinas v. Holder*, 760 F.3d 905, 908 (8th Cir. 2014) (Board's "expression of discretion" unreviewable). To be sure, Herrera contests the Board's "conclusion that the facts presented were not exceptional" in making its discretionary call. *Patel v. Bondi*, No. 24-3624, 2025 WL 1013473, at *2 (6th Cir. Mar. 31, 2025); *see also Dable v. Barr*, 794 F. App'x 490, 494-95 (6th Cir. 2019) (citing *Lisboa v. Holder*, 570 F. App'x 468, 473 (6th Cir. 2014)). But such freestanding fact assessment—that is, one lacking any prospect that the Board "appl[ied] the wrong rule or misapprehend[ed] the scope of its discretion"—is not enough to confer jurisdiction even in circuits that engage in "legal errors" review. *Patel*, 2025 WL 1013473, at *2 (collecting cases); *cf. Sang Goo Park v. Att'y Gen.*, 846 F.3d 645, 650 (3d Cir. 2017) ("[T]he presence of an exceptional situation does not compel it to act; the [Board] may still decide against reopening.").

---

**2***See Thompson v. Barr*, 959 F.3d 476, 483 n.3 (1st Cir. 2020); *Malukas v. Barr*, 940 F.3d 968, 970 (7th Cir. 2019); *Williams v. Garland*, 59 F.4th 620, 658 n.9 (4th Cir. 2023) (Rushing, J., dissenting); *Ramirez-Lopez v. Garland*, No. 21-3794, 2022 WL 2161087, at *2 n.2 (6th Cir. June 15, 2022); *Sow Bolo v. Barr*, 828 F. App'x 295, 298 (6th Cir. 2020); 33 Wright & Miller's Federal Practice & Procedure § 8418 n.10 (2d ed. 2025).

**3***See Patel v. Bondi*, No. 24-3624, 2025 WL 1013473, at *2 (6th Cir. Mar. 31, 2025); *Singh v. Garland*, No. 21-3812, 2022 WL 4283249, at *9 (6th Cir. Sep. 16, 2022); *Hermiz v. Garland*, 848 F. App'x 184, 187 (6th Cir. 2021).

Nor does another recent decision of this Court—*Sarkisov v. Bondi*, --- F.4th ----, 2025 WL 3251118 (6th Cir. 2025)—counsel to the contrary.  *Sarkisov* concluded that courts have jurisdiction to review the Board's "determination that a petitioner failed to present 'extraordinary circumstances' warranting the Attorney General's exercise of discretion to reopen" the removal proceedings of certain applicants under the Violence Against Women Act.  *Id.* at *2 (quoting 8 U.S.C. § 1229a(c)(7)(C)(iv)(III)).  In so ruling, we explained that the statutory "safe harbor," *id.*; *see* 8 U.S.C. § 1252(a)(2)(D), as interpreted by the Supreme Court, *see Wilkinson v. Garland*, 601 U.S. 209, 212 (2024), preserves courts' jurisdiction to review mixed questions of law and fact.  And we noted that the statutory provision at issue—which triggers upon a showing of "extraordinary circumstances," 8 U.S.C. § 1229a(c)(7)(C)(iv)(III)—presented that type of mixed question, *Sarkisov*, 2025 WL 3251118, at *3.  That was because "the statute says that the [Board] may exercise discretion in a case that meets a certain legal standard." *Id.* at *5.

*Sarkisov* distinguished itself from cases—like this one—involving "purely discretionary decisions, such as when the [Board] declines to reopen a removal order *sua sponte*." *Id.* at *2. And for sound reasons.  The regulation that provides the Board's sua sponte reopening authority, 8 C.F.R. § 1003.2(a), leaves courts with "no law to apply," *Rais*, 768 F.3d at 463 (citation omitted).  By contrast, *Sarkisov* read the at-issue statutory provision to provide the kind of "judicially manageable" "legal standard" that supported review.  2025 WL 3251118, at *4. *Sarkisov*, moreover, saw its reliance on 8 U.S.C. § 1252(a)(2)(D) as reason to distinguish the no-review holding of *Harchenko*, 379 F.3d at 410-11, which arose under a different, prior provision of the INA that predated the safe-harbor provision, *Sarkisov*, 2025 WL 3251118, at *5.  Yet our rejection of sua sponte reopening review post-*Harchenko* rests not on any judicial-review provisions of the INA, but on the determination that the APA itself precludes review.  *See supra* p. 6 & n.1.  Nor does *Sarkisov*'s reliance on "recent [Board] decisions" to help apply the judicially manageable "extraordinary circumstances" provision there translate to sua sponte reopening decisions. 2025 WL 3251118, at *6.  The Supreme Court has rejected the notion "that if the agency gives a 'reviewable' reason for otherwise unreviewable action, the action becomes reviewable." *ICC v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 283 (1987).  So even if Board decisions helped clarify *Sarkisov*'s statutory standard, the Board's explanations for denying

requests to reopen sua sponte do not enable judicial review over those "otherwise unreviewable" decisions in the same way. *Id.*

For the above reasons, we lack jurisdiction to review the Board's refusal to reopen Herrera's proceedings sua sponte. We therefore dismiss the portion of Herrera's petition seeking review of the Board's sua sponte reopening denial.

C

Last, we reject Herrera's argument that the Board violated her Fifth Amendment right to due process by issuing a "cursory decision" that "fail[ed] to provide a reasoned analysis of her arguments regarding lack of notice and due diligence." Herrera Br. 18-19. "[T]he Board has no duty to write an exegesis on every contention." *Akhtar v. Gonzales*, 406 F.3d 399, 408 (6th Cir. 2005) (citation omitted). It need only "consider the issues raised, and announce its decision in terms sufficient to enable [us] to perceive that it has heard and thought and not merely reacted." *Id.* (citation omitted). The Board explained that because the number bar "dispos[ed]" of Herrera's second motion to reopen, it "need not address [Herrera's] remaining appellate arguments." A.R. 4. That sufficed for due-process purposes. Once the Board explained the "basis on which it decided against" Herrera, it "owed no duty" to examine Herrera's alternative arguments "for sake of completeness." *Zhang v. Mukasey*, 543 F.3d 851, 854-55 (6th Cir. 2008). Herrera's contention that the Board "did not engage in a meaningful review" of her case thus lacks merit. *Gishta v. Gonzales*, 404 F.3d 972, 980 (6th Cir. 2005).

\* \* \*

We deny the petition in part and dismiss the petition in part.